**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **TRICON PRECAST, LTD.,** | § | |
| | § | |
| *Plaintiff*, | § | |
| vs. | § | |
| | § | **Civil Action No.: 4:19-cv-00875** |
| **EASI-SET INDUSTRIES, INC.,** | § | |
| | § | |
| | § | |
| *Defendant*. | § | |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) (DKT. 13)

Plaintiff Tricon Precast, Ltd. hereby opposes Defendant Easi-Set Industries, Inc.'s Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). DKT. 13.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ 3
INTRODUCTION .......................................................................................................................... 4
SUMMARY OF ARGUMENT ...................................................................................................... 4
SUMMARY OF RELEVANT FACTS ......................................................................................... 6
LEGAL STANDARD .................................................................................................................... 7
THE MOTION TO DISMISS SHOULD BE DENIED. ............................................................... 8
   A.   Outstanding Factual Issues Preclude Dismissal Under The Noerr-Pennington Doctrine. …………………………………………………………………………………..8
      1.   Tricon Sufficiently Alleges Antitrust Claims Under Both the Texas Antitrust Act and Under Section 2 of the Sherman Act. ..................................................................... 9
   B.   The *Noerr-Pennington* Doctrine Does Not Protect Easi-Set's Conduct. ....................... 11
      1.   The Court Should Apply the Supreme Court's Analysis Under *Cantor* and *Midcal*. 12
      2.   The "V-Shape" Requirement is Not an Express Texas Policy, and Texas Does Not Actively Supervise Any Anticompetitive Conduct. ................................................... 14
      3.   This Court Should Hold the *Noerr-Pennington* Doctrine Does Not Protect Easi-Set's Conduct Under *Cantor* and *Midcal*. ................................................................ 15
   C.   The Sham Exception Applies Such that Tricon's Claims Must Proceed to Discovery. 16
CONCLUSION ............................................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**
*Allied Tube & Conduit Corp. v. Indian Head*, 486 U.S. 492 (1988) ........................................... 17
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ........................................................................................ 8
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). ................................................................. 8, 10
*California Retail Liquor Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980). ........... 5, 14, 15, 16
*California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 514 (1972). ....................... 17
*Cantor v. Detroit Edison Co.*, 428 U.S. 579 (1976). ..................................................... 5, 13, 14, 16
*Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994) ............................................................................. 8
*Cliff Food Stores, Inc. v. Kroger, Inc*., 417 F.2d 203 (5th Cir. 1969). ........................................... 8
*Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358, 1372 (5th. Cir. 1983) ............................ 17
*Constr. Cost Data, LLC v. Gordian Group, Inc.*, 2017 WL 2266993 (S.D. Tex. Apr. 24, 2017),
   *report and recommendation adopted*, 2017 WL 2271491 (S.D. Tex. May 22, 2017) ....... 11, 12
*Cuvillier v. Taylor*, 503 F.3d 397 (5th Cir. 2007) ........................................................................ 10
*Destec Energy Inc. v. Southern California Gas Co.*, 5 F.Supp.2d 433 (S.D. Tex. 1997) ....... 14, 15
*E. R. R. Presidents Conference v. Noerr Motor Freight, Inc*., 365 U.S. 127 (1961) ............... 12, 17
*In re Burlington Northern, Inc.*, 822 F.2d 518, 527 (5th Cir. 1987) ............................................. 17
*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) ..................................................... 10
*McConathy v. Dr.Pepper/Seven Up Corp.*, 131 F.3d 558 (5th Cir. 1998). ..................................... 8
*Parker v. Brown*, 63 U.S. 307 (1943). ......................................................................................... 13
*Quinonez v. Nat. Ass'n of Sec. Dealers, Inc.*, 540 F.2d 824 (5th Cir. 1976) .................................. 9
*Ramteq, Inc. v. Alfred Karcher, Inc., et al*, 2006 WL 8451174 (S.D. Tex. Jan. 12, 2006) ............ 9
*Spanish Broad. Sys. of Fla., Inc. v Clear Channel Commc'ns, Inc*., 376 F.3d 1065 (11th Cir.
   2004) .......................................................................................................................................... 9
*United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965) ............................................. 13
*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965) ..................... 17
*Wilson v. Birnberg*, 667 F.3d 591 (5th Cir. 2012). ........................................................................ 8
*Wolf v. Cowgirl Tuff Co.*, 2016 WL 4597638 (W.D. Tex. Sept. 2, 2016) .................................... 11

**Federal Statutes**
15 U.S.C.A. § 1 (West). ................................................................................................................ 10
15 U.S.C.A. § 2 (West). ................................................................................................................ 10

**State Statutes**
Tex. Bus. & Com. Code Ann. § 15.05 (West). ............................................................................. 10

## INTRODUCTION

Plaintiff Tricon Precast, Ltd. ("Tricon") respectfully submits this memorandum of law in support of its Response to Defendant Easi-Set Industries, Inc.'s ("Easi-Set") Motion to Dismiss Count Four and Count Five of Tricon's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* DKT. 13. As grounds therefor, Tricon shows the Court as follows:

## SUMMARY OF ARGUMENT

1. On June 12, 2019, Easi-Set filed its Motion to Dismiss Count Four and Count Five of Tricon's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] *See* DKT. 13. Tricon alleges sufficient factual matter to plead a coherent cause of action under both the Texas Antitrust Act and Sherman Act. The fact intensive analysis presented by the *Noerr-Pennington* Doctrine and the sham exception thereto does not lend itself to disposition on a motion to dismiss.

2. The *Noerr-Pennington* Doctrine should not shield Easi-Set for its antitrust violations. In *Cantor,* the Supreme Court stated:

> "[N]othing in the *Noerr* opinion implies that the mere fact that a state regulatory agency may approve a proposal included in a tariff, and thereby require that proposal be implemented until a revised tariff is filed and approved, is sufficient reason for conferring antitrust immunity on the proposed conduct…"

*Cantor v. Detroit Edison Co.*, 428 U.S. 579, 601-02 (1976). Under the Supreme Court's analysis in *Midcal*, decided after *Cantor*, private party conduct pursuant to a regulatory program is granted antitrust immunity only if a two-prong test is met. *Cal. Retail Liquor Ass'n v. Midcal Aluminum,*

---

[1] Easi Set makes certain statements in the "Procedural Background" section of its brief regarding a separate lawsuit in Virginia between Tricon and Easi Set. (Doc. 13-1 at 1-2). These statements, some of which are inaccurate, appear to relate to Easi Set's pending motion to transfer to Virginia, not to the instant motion to dismiss. Easi Set inaccurately states that both this lawsuit and the Virginia lawsuit concern (a) enforcement of the License Agreement, and (b) the "V-shape" trade dress. (Doc. 13-1, ¶ 6). Not so. The only claims related to enforcement of the License Agreement are in the Virginia lawsuit, and the only claims related to the "V-shape" trade dress are in this lawsuit. The Virginia lawsuit has nothing to do with the "V-shape" trade dress.

*Inc.*, 445 U.S. 97 (1980). The *Midcal* test requires that: (1) the challenged restraint be clearly articulated and affirmatively expressed as state policy; and (2) the state actively supervise any anticompetitive conduct. *Id.* at 104-06. When this test is met, the Court should hold in line with *Cantor,* that a private party may not shield himself from antitrust liability by having a regulatory body sign off on a requirement that results in anticompetitive activity. Holding as such would not undercut *Noerr*, but rather, would represent a pragmatic evaluation of the regulatory process while protecting the market from anticompetitive activity. Under this approach to *Noerr*, Easi-Set would not be protected for its antitrust violations.

      3.      The sham exception to the Doctrine applies in this case such that Easi-Set may be held liable for its antitrust violations, despite the alleged applicability of the *Noerr-Pennington* Doctrine. The Texas Department of Transportation (TXDOT) requires the use of "V-Shape" tapered ends in a significant percentage of concrete barriers. *See* DKT. 10, ¶ 11. This requirement is the product of Easi-Set's improper conduct. *Id.* at ¶ 15. Easi-Set employees met with TXDOT, provided TXDOT with the "V-Shape" design specifications, and yet willfully failed to disclose the relevant fact that the "V-Shape" was subject to Easi-Set's trademark registration. *Id.* at ¶ 16.

      4.      This lack of proper disclosure was a willful attempt by Easi-Set to exclude Tricon from the market. As such, this conduct was a sham effort to influence TXDOT into enacting a requirement that would exclude Tricon from the marketplace. Easi-Set's conduct has effectively raised the price of precast concrete traffic barrier and resulted in an unreasonable restraint on trade. *See* DKT. 10, ¶¶ 4, 11, 18, 21. Accordingly, the Court should hold the sham exception to the *Noerr-Pennington* Doctrine applies and is properly plead such that Easi-Set may be held liable for its antitrust violations.

## SUMMARY OF RELEVANT FACTS

5. Tricon is an approved TXDOT precast concrete manufacturer and supplier. *See* DKT. 10, ¶ 11. As such, any and all concrete products manufactured and produced for TXDOT must conform to TXDOT design specifications. *Id.* TXDOT specifies that certain precast concrete traffic barriers must include "V-Shape" tapered ends. *Id.* This specification is the result of Easi-Set's improper conduct, and has created an unreasonable restraint on trade and monopoly within the state of Texas. *Id.* at ¶¶ 15-16.

6. Since 1990, Easi-Set has engaged in a continuous scheme to implement the "V-Shape" design requirement in order to eliminate and impede marketplace competition. *Id.* at ¶ 17. Easi-Set frequently met with TXDOT employees and provided them with the "V-Shape" tapered end design specifications. *Id.* at ¶ 16. Easi-Set improperly induced TXDOT to include the "V-Shape" tapered ends as a requirement in TXDOT projects. This conduct has effectively raised the price of precast concrete traffic barriers. *Id.* at ¶¶ 4, 11, 18, 21. In their dealings with TXDOT, however, Easi-Set willfully failed to disclose the relevant fact that the "V-Shape" design is a registered trademark of Easi-Set. *Id.* at ¶ 16; *See also* Exhibit 1 – '357 Trademark Registration.

7. As a result, Tricon and other manufacturers may not freely participate in the market. *Id.* at ¶ 11. In order to comply with the relevant TXDOT design specification, Tricon must obtain licensing rights from Easi-Set. *Id.* at ¶ 21. Effectively, this makes Easi-Set the exclusive supplier of precast concrete traffic barriers. Such requirement has created an unreasonable restraint on trade and monopoly in favor of Easi-Set. *Id.* at ¶¶ 20-21.

8. Tricon has attempted to investigate whether or not there is a legitimate purpose for including "V-Shape" tapered ends as a TXDOT design requirement. *Id.* at ¶ 18. Gilbert Flores, principal of Tricon, spoke directly with Kenneth Mora, TXDOT Director of Roadway Design. *Id.*

Mr. Mora informed Mr. Flores that to his knowledge there is no legitimate purpose for including the "V-Shape" tapered ends as a design requirement. *Id.*; *See also* Exhibit 2 – Declaration of Gilbert Flores.

9. Further, Mr. Flores was informed that there is no underlying explanation for why the "V-Shape" tapered ends, registered as a trademark in favor of Easi-Set, are included as a design requirement in TXDOT projects. *Id.* This is because the inclusion of this requirement is the result of Easi-Set's improper conduct and backroom communications with TXDOT. *Id.* at ¶ 16. To comply with TXDOT design specifications, Tricon must obtain a license from Easi-Set, and pay royalties in accordance therewith, or risk suit for trademark infringement. The result of this requirement is that potential competitors, including Tricon, have been forced to pay increased prices and have been excluded from active participation in the road construction marketplace. *See Id.* at ¶¶ 4, 11, 18, 21.

## LEGAL STANDARD

10. When considering a motion to dismiss under 12(b)(6), the court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff. *McConathy v. Dr.Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998). A complaint survives a motion to dismiss if its facts, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility requires that the plaintiff "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

11. When confronted with a motion to dismiss under 12(b)(6), the court's inquiry should focus on the complaint as a whole, "regardless of how much of it is discussed in the motion

to dismiss." *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). "Dismissal is improper if the allegations support relief on any possible theory." *Id*. (quotation marks omitted) (quoting *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994)). Rule 12(b)(6) dismissals are disfavored in antitrust actions. *Cliff Food Stores, Inc. v. Kroger, Inc*., 417 F.2d 203, 205 (5th Cir. 1969). Courts should only sparingly grant dismissals in antitrust cases because those cases require detailed factual analysis. *Id.*

### THE MOTION TO DISMISS SHOULD BE DENIED.

12. The Court should deny Easi-Set's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). Indeed, "the threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low, and Fed. R. Civ. P. Rule 12(b)(6) dismissals are particularly disfavored in fact intensive antitrust cases." *Ramteq, Inc. v. Alfred Karcher, Inc., et al*, 2006 WL 8451174, at *1 (S.D. Tex. Jan. 12, 2006) (quoting *Spanish Broad. Sys. of Fla., Inc. v Clear Channel Commc'ns, Inc*., 376 F.3d 1065, 1070 (11th Cir. 2004); *see also Quinonez v. Nat. Ass'n of Sec. Dealers, Inc.*, 540 F.2d 824, 828 (5th Cir. 1976) (cautioning against narrowing the utility and application of the Sherman Act by "requiring parties to plead with evidentiary specificity the acts complained of").

13. Further, the *Noerr-Pennington* Doctrine, analyzed under *Cantor* and *Midcal*, does not shield Easi-Set from liability for its antitrust violations. Additionally, because Easi-Set's conduct was directly intended to harm competitors, the sham exception to the *Noerr-Pennington* Doctrine applies to allow Tricon to defeat Easi-Set's Motion to Dismiss. For these reasons, the Court should deny Easi-Set's Motion to Dismiss, and allow discovery on Tricon's antitrust claims.

**A.     Outstanding Factual Issues Preclude Dismissal Under The Noerr-Pennington Doctrine.**

14. The instant suit was commenced on March 11, 2019. *See* DKT. 1. The relative

youth of this action should factor into the Court's decision to permit discovery on Tricon's antitrust claims. *Ramteq,* 2006 WL 8451174 at *1. Without discovery, Tricon would be required to marshal all of its evidence prior to filing suit. Fact issues exist, including but not limited to (1) whether Easi-Set fraudulently induced TXDOT to require the "V-Shape" tapered ends as a design requirement in precast concrete traffic barriers; (2) the extent to which there is a state policy for including the "V-Shape" tapered ends as a design requirement; (3) whether TXDOT actively polices the "V-Shape" tapered ends as a design requirement; (4) the extent to which Easi-Set's conduct has created an unreasonable restraint on trade and monopoly within the road construction marketplace; and (5) the extent to which Easi-Set's conduct has raised road construction costs on the State of Texas and Texas taxpayers. Discovery is needed to properly evaluate these issues, and the nature of Tricon's antitrust claims renders a motion to dismiss inappropriate at this time, as Tricon has met its pleading standard.

    **1.    Tricon Sufficiently Alleges Antitrust Claims Under Both the Texas Antitrust Act and Under Section 2 of the Sherman Act.**

15. "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Motions to Dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted).

16. The Texas Antitrust Act makes it unlawful to monopolize any part of trade or commerce. Tex. Bus. & Com. Code Ann. § 15.05 (West).[2] The Act also makes every contract,

---

[2] Easi Set states that "[t]he purpose of the Texas Antitrust Act 'is to maintain and promote economic competition in trade and commerce occurring wholly or partly within the State of Texas and to provide the benefits of that competition to consumers of the state.'" (DKT. 13-1, ¶ 14). As explained herein and as alleged in Tricon's First Amended

combination, or conspiracy in restraint of trade or commerce unlawful. *Id.* Similarly, the Sherman Act makes it a felony for any person to monopolize any part of trade or commerce among the states in restraint of trade. 15 U.S.C.A. § 2 (West). The Sherman Act also declares it a felony to make any contract in restraint of trade among the states. 15 U.S.C.A. § 1 (West).

17. Here, Tricon alleges that Easi-Set acquired power and control within the Texas market through improper tactics which led to the creation of a monopoly and placed an unreasonable restraint upon trade. *See* DKT. 10, ¶¶ 43, 48. Tricon alleges that Easi-Set employees frequently met with TXDOT and provided TXDOT with the "V-Shape" design specifications to include as a requirement. *Id.* at ¶ 16. Tricon alleges that Easi-Set's conduct has created a monopoly and unreasonable restraint on trade. *Id.* at ¶¶ 43, 48. To comply with the TXDOT requirement, Tricon must obtain licensing rights from Easi-Set, or risk litigation for trademark infringement. Thus, the result in Easi-Set's conduct is that the price of precast concrete traffic barriers has effectively increased. *Id.* at ¶¶ 4, 11, 18, 21. Such a Catch-22 prevents Tricon from freely engaging in trade within the Texas market.

18. Tricon also asserts that state policy interests do not favor the inclusion of the "V-Shape" tapered ends as a design requirement in precast concrete traffic barriers. *Id.* at ¶¶ 41, 47. Further, a fact issue exists as to whether or not the state of Texas actively police's any anticompetitive conduct related to the "V-Shape" traffic barriers. These allegations, when taken together, raise a right to relief above a speculative level. Tricon has alleged sufficient facts to establish a claim for relief under both the Texas Antitrust Act and the Sherman Act.

19. Additionally, in *Gordian* the Court analyzed whether or not dismissal was

---

Complaint (DKT. 10), Easi Set's anticompetitive maneuver of causing its "V-shape" trade dress to be included as part of TXDOT design specifications thwarts this purpose as it interferes with its competitors' business and raises road construction prices on Texas tax payers.

appropriate when plaintiff raised the sham exception to the *Noerr-Pennington* doctrine. *Constr. Cost Data, LLC v. Gordian Group, Inc.*, 2017 WL 2266993, at *5 (S.D. Tex. Apr. 24, 2017), *report and recommendation adopted*, 2017 WL 2271491 (S.D. Tex. May 22, 2017). The Court stated "an exacting rule: if the sham litigation exception 'is not foreclosed by the allegations in the complaint,' a motion to dismiss based on the *Noerr-Pennington* defense must be denied." *Id.* at *6 (quoting *Wolf v. Cowgirl Tuff Co.*, 2016 WL 4597638, at *9 (W.D. Tex. Sept. 2, 2016)).

20. Here, Tricon's amended complaint compels the conclusion that Easi-Set's activities fall within the sham exception to the *Noerr-Pennington* Doctrine. Specifically, Tricon alleges that Easi-Set, in its communications with TXDOT, willfully failed to disclose the important fact that the "V-Shape" tapered ends were a registered trademark of Easi-Set. *See* DKT. 10, ¶ 16. Thus, Easi-Set did not genuinely attempt to influence TXDOT, but rather willfully withheld information from TXDOT in order to harm competitors and to gain a monopoly within the marketplace. Easi-Set's conduct had led to an increase in price and improper exclusion of competition in the relevant market. *Id.* at ¶ 21.

21. In *Gordian,* the Court denied dismissal where the complaint did not preclude the possibility that the Defendant's conduct was objectively baseless, or subjectively motivated as a means of directly interfering with Plaintiffs' business relationships. *Gordian*, 2017 WL 2266993 at *7. The same rationale applies here. Tricon's amended complaint does not preclude the foregoing findings. Discovery is needed to determine the nature and extent of Easi-Set's communications with TXDOT; Tricon is not required to marshal all evidence without the opportunity for discovery. Accordingly, the Court should deny Easi-Set's Motion to Dismiss.

**B. The *Noerr-Pennington* Doctrine Does Not Protect Easi-Set's Conduct.**

22. Under the rationale in *Cantor* and *Midcal,* the *Noerr-Pennington* Doctrine does not

immunize Easi-Set from antitrust liability. At a minimum, the sham exception to the *Noerr-Pennington* Doctrine applies so that Easi-Set may be held liable for its antitrust violations as alleged. Accordingly, the Court should deny Easi-Set's Motion to Dismiss.

### 1. The Court Should Apply the Supreme Court's Analysis Under *Cantor* and *Midcal*.

23. The *Noerr-Pennington* Doctrine is derived from two cases holding that the Sherman Act does not reach constitutionally-protected petitioning activity. *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc*., 365 U.S. 127, 144 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670-71 (1965). The Doctrine renders antitrust laws inapplicable to action intended to influence legislative, executive, administrative, or judicial decision-making. *Id.* The Doctrine was inadvertently called into question by *Cantor. Cantor v. Detroit Edison Co.*, 428 U.S. 579 (1976).

24. In *Cantor*, Detroit Edison, a private utility regulated by the Michigan Public Service Commission, had long been the sole supplier of electricity in southeastern Michigan. *Id.* at 582. Detroit Edison also furnished its residential customers with free light bulbs. *Id.* This practice could not be changed unless a new tariff was filed with and approved by the Commission. *Id.*

25. Cantor, a retail druggist who sold lightbulbs, brought an antitrust action against Detroit Edison, alleging that Edison was using its monopoly power in the distribution of lightbulbs to restrain competition. *Id.* at 579. Relying on *Parker v. Brown*, in which the Supreme Court held that a state imposed monopoly was beyond the reach of the Sherman Act, the district court and the Circuit Court both held that the Commission's approval of the tariff was sufficient state action to exempt the light bulb program. *Id.*; *See also Parker v. Brown*, 63 U.S. 307 (1943).

26. The Supreme Court reversed. *Cantor*, 428 U.S. at 579. The Court noted that while the light bulb program was regulated, the primary function of the Commission was to regulate

electricity and neither the Michigan legislature nor the Commission had ever specifically investigated the utility's practice of furnishing light bulbs to its residential customers. *Id.* at 584. Therefore, the Court reasoned, the state's policy was "neutral" regarding the desirability of the Detroit Edison's light bulb program.[3] *Id.* at 585. Accordingly, the Court held that liability could attach to Detroit Edison for its anticompetitive conduct. *Id*. at 579.

27. After holding that defendant was not exempt from liability for antitrust violations, the Court stated:

> "[N]othing in the *Noerr* opinion implies that the mere fact that a state regulatory agency may approve a proposal included in a tariff, and thereby require that proposal be implemented until a revised tariff is filed and approved, is sufficient reason for conferring antitrust immunity on the proposed conduct…"

*Id*. at 601-02. Thus *Cantor*, and the Supreme Court's subsequent opinion in *Midcal,* should be interpreted to mean a private party may not simply shield himself from antitrust liability by having a regulatory body rubber stamp a regulation which results in anticompetitive activity.

28. In *Midcal*, the Supreme Court articulated that private party conduct pursuant to a state regulatory program is granted immunity for antitrust violations only if the conduct meets a two-prong test. *Midcal*, 445 U.S. at 105. This test requires that: (1) the challenged restraint be clearly articulated and affirmatively expressed as state policy; and (2) the state actively supervise any anticompetitive conduct. *Id.*

29. In *Destec Energy,* this Court analyzed both *Midcal* and *Cantor*. *Destec Energy Inc. v. Southern California Gas Co.*, 5 F.Supp.2d 433 (S.D. Tex. 1997). In *Destec Energy*, Defendant SoCalGas, a private California corporation providing natural gas services, was subject to

---

[3] Tricon asserts here that there is no State purpose behind the inclusion of the "V-Shape" as a design requirement. *See* DKT. 10, ¶ 18. Likewise, the State's policy here is "neutral" as there is no State purpose behind the inclusion of the "V-shape" as a design requirement. *Id*. Accordingly, under *Cantor*, Easi-Set is not entitled to protection under the *Noerr-Pennington* Doctrine.

regulation by the California Public Utilities Commission. *Id.* at 438. As a regulated entity, SoCalGas was required to include "transport-or-pay provisions" in all its contracts. *Id.* Plaintiffs filed suit against SoCalGas, alleging that SoCalGas monopolized and restrained trade in the market by refusing to negotiate contracts without transport-or-pay provisions (which were required by the state), thus preventing Plaintiff from financing the construction of projects within the region. *Id.* at 438-39. To determine whether Defendant could be held liable for antitrust violations, this Court applied the *Midcal* test. *Id.* at 444.

30. Similar to the facts in *Destec Energy*, Tricon is regulated by TXDOT. As a regulated entity, Tricon is required to include "V-Shape" tapered ends in specified precast concrete traffic barriers. Tricon alleges that Easi-Set's improper conduct, which resulted in the foregoing requirement, monopolized and restrained trade within the state of Texas, thus preventing Tricon from fully participating in the marketplace due to an effective increase in costs. *See* DKT. 10, ¶ 4. Where a monopoly or unreasonable restraint on trade is the result of state regulation enacted solely as a result of improper private party efforts, that private party should be held liable for antitrust violations if the two-prong *Midcal* test is satisfied.

**2. The "V-Shape" Requirement is Not an Express Texas Policy, and Texas Does Not Actively Supervise Any Anticompetitive Conduct.**

31. Private party conduct pursuant to a state regulatory program is granted immunity for antitrust violations only if (1) the challenged restraint is clearly articulated and affirmatively expressed as state policy; and (2) the state actively supervises any anticompetitive conduct. *Midcal*, 445 U.S. at 105.

32. In analyzing the first prong of the *Midcal* test, this Court looked to *Cantor*. *Id.*; *Destec Energy*, 5 F.Supp.2d at 448. The Court noted that while the state policy requirement articulated in *Cantor* is not narrowly construed under current precedent, the relevant question is

whether the state deliberately displaced competition with regulation and whether the challenged restraint was part of the field in which the State clearly intended to regulate or was a foreseeable consequence of such regulation. *Id.*

33. In Easi-Set's communications with TXDOT, Easi-Set willfully failed to disclose that the "V-Shape" taper was a trademark registered to Easi-Set. *See* DKT. 10, ¶ 16. Because TXDOT did not have this information at the time it enacted the "V-Shape" design standard, TXDOT did not deliberately displace competition. TXDOT was unaware that inclusion of the "V-Shape" would require Easi-Set's competitors to obtain licensing rights, and pay royalties to Easi-Set. Thus, the resulting monopoly and restraint and increased costs that were passed along to the State of Texas and Texas taxpayers.

34. Further, Gilbert Flores, principal at Tricon, spoke directly with Kenneth Mora, TXDOT Director of Roadway Design, in this regard. *See* DKT. 10, ¶¶ 17-18. Mr. Mora relayed that to his knowledge there is no legitimate purpose for including the "V-Shape" tapered ends as a design requirement. *Id.* Easi-Set's improper conduct alone lead to this requirement. Further, regarding the second prong of the *Midcal* test, a fact question exists as to whether or not Texas actively supervises anticompetitive conduct as it relates to the "V-Shape" tapered ends. Accordingly, under the *Midcal* test in light of *Cantor*, the Court should deny Easi-Set's Motion to Dismiss, and allow Easi-Set's claim to proceed to discovery on the highly technical and fact intensive antitrust claims.

### 3. This Court Should Hold the *Noerr-Pennington* Doctrine Does Not Protect Easi-Set's Conduct Under *Cantor* and *Midcal*.

35. To summarize, *Cantor* articulated that *Noerr* does not preclude liability for antitrust violations merely because a regulatory body approves of a regulation submitted by a private party. *Cantor*, 428 U.S. at 601-02. In *Midcal*, the Court held that a private party is granted antitrust

immunity for conduct pursuant to a state regulatory program only when the challenged restraint is articulated state policy, and the state actively supervises anticompetitive conduct. *Midcal*, 445 U.S. at 105. In *Destec Energy*, this Court utilized *Cantor* in determining whether the first prong of the *Midcal* test is satisfied.

36. Taken together, when a state agency enacts a regulation submitted by a private party, that private party should be held liable for antitrust violations if the *Midcal* test is satisfied. Here, no Texas policy purpose underlies the "V-Shape" requirement. Discovery is needed to determine whether Texas actively supervises any anticompetitive conduct as it relates to the "V-Shape." Thus, at a minimum, the issues before the Court are premature for determination. The sham exception applies such that Tricon's antitrust claims should not be dismissed, despite the alleged applicability of *Noerr*.

C. **The Sham Exception Applies Such that Tricon's Claims Must Proceed to Discovery.**

37. The sham exception to the *Noerr-Pennington* Doctrine applies because Easi-Set's conduct with TXDOT was "nothing more than an attempt to interfere directly with the business relationships" of Tricon and others. *Noerr*, 365 U.S. at 144. Easi-Set states that "any contention that Easi-Set engaged in sham efforts to petition Texas is undercut by the alleged success of those efforts." *See* DKT. 13-1, ¶ 18. Easi-Set draws the conclusion that because of the success of their efforts, the petitioning activities "certainly cannot be categorized as a sham." *Id.* (quoting *Allied Tube & Conduit Corp. v. Indian Head*, 486 U.S. 492, 502 (1988)).

38. While the Court in *Allied Tube* admittedly recognized that evidence of successful efforts to petition the government is persuasive evidence of *Noerr* immunity, it withheld holding that as a general rule this precludes a finding of sham activity. The Fifth Circuit also stated in *Burlington* that there is not "a categorical rule that successful petitioning can never be sham." *In*

re Burlington Northern, Inc., 822 F.2d 518, 527 (5th Cir. 1987). Rather, the Court looks to whether the antitrust defendant was genuinely attempting to influence government decision making. *Id.* (citing *Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358, 1372 (5th. Cir. 1983).

39. In *Walker*, the Court determined whether the maintenance and enforcement of a patent obtained by fraud may be the basis of an antitrust allegation. *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 173 (1965). The Court held that the enforcement of a fraudulently procured patent may violate section 2 of the Sherman Act. *Id.* at 178. *Walker* is consistent with the Supreme Court's rationale in *California Motor Transport* where the Court found that assertion of a claim known to be baseless is not protected by the first amendment. *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 514 (1972). Accordingly, *Walker* and *California Motor* are authority for subjecting Easi-Set to antitrust liability for intentionally misrepresenting information to TXDOT, and resulting in an effective monopoly and restraint upon trade.

40. Here, although Easi-Set induced and encouraged TXDOT to require the "V-Shape" tapered ends in precast concrete traffic barriers, their efforts were hardly genuine. *See* DKT. 10 ¶¶ 40, 46. Easi-Set willfully failed to disclose to TXDOT the relevant fact that the "V-Shape" was subject to Easi-Set's now contested trademark as shown in the '357 registration. *Id.* at ¶ 16; *see also* Exhibit 1. As a result, TXDOT now requires "V-Shape" tapered ends in a significant portion of precast concrete barriers due to the willful misrepresentation of Easi-Set. Moreover, Easi-Set's conduct has resulted in increased costs within the road construction market. *See* DKT. 10, ¶ 21.

41. Such misrepresentation was to harm competitors including Tricon. To comply with TXDOT standards, Tricon must obtain a License from Easi-Set as it relates to the "V-Shape". Per that license, Tricon must pay Easi-Set royalties, or risk suit for trademark infringement. This

Catch-22 is the product of Easi-Set's misrepresentations to TXDOT. Such intentional misrepresentations can be deemed a sham, within the meaning of the exception to the *Noerr-Pennington* Doctrine because such intentional misrepresentations to TXDOT have deprived their standards of legitimacy. Accordingly, the Court should hold that the sham exception to the *Noerr-Pennington* Doctrine applies so that Easi-Set may be held liable for its antitrust violations and the unreasonable restraint on trade and monopoly that have resulted therefrom.

## CONCLUSION

Tricon respectfully requests that the Court deny Easi-Set's Motion to Dismiss and permit Tricon's antitrust claims to proceed to the merits.

Dated: June 28, 2019.

Respectfully submitted,

By: /s/ Simon W. Hendershot, III
    Simon W. Hendershot, III
    SBN: 09417200
    SDBN: 8792
    trey@hchlawyers.com
    Katie L. Cowart
    SBN: 24048268
    SDBN: 608974
    kcowart@hchlawyers.com
    Brooke E. Jones
    SBN: 24107537
    SDBN: 3342076
    bjones@hchlawyers.com
    HENDERSHOT, CANNON & HISEY, PC
    1800 Bering Drive, Suite 600
    Houston, Texas 77057
    Telephone: (713) 783-3110
    Facsimile: (713) 783-2809

By: /s/ C. Dale Quisenberry
    C. Dale Quisenberry
    SBN: 24005040
    SDBN: 20006
    dale@quisenberrylaw.com

>QUISENBERRY LAW PLLC
>13910 Champion Forest Drive, Suite 203
>Houston, Texas 77069
>Telephone: (832) 680-5000
>Facsimile: (832) 680-5555
>**ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

      I hereby certify that on June 28, 2019 the foregoing Response to Defendant's Motion to Dismiss was filed electronically with the Clerk of Court and served on the following opposing counsel using the CM/ECF system:

**PECKAR & ABRAMSON, P.C.**

Matthew S.C. Moore
State Bar No. 24042270
Federal Bar No. 1031686
mmoore@pecklaw.com
Courtney Bryan Sheaffer
State Bar No. 24072005
Federal Bar No. 1580787
3050 Post Oak Blvd., Suite 500
Houston, Texas 77056
Telephone: 713-568-150
Facsimile: 713-568-1490