IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRICON PRECAST, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-19-875 |
| | § | |
| EASI SET INDUSTRIES, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Tricon Precast, Ltd. has sued Easi-Set Industries, Inc., alleging that Easi-Set's registered trademark—a tapered top to concrete traffic barriers—is invalid, must be cancelled, and that Tricon has not infringed it. Tricon asserts that Easi-Set has violated the Texas Antitrust Act and the Sherman Act by "inducing and encouraging" the Texas Department of Transportation to require the taper in design specifications for concrete traffic barriers purchased by Texas government entities. Easi-Set has moved to transfer to the Eastern District of Virginia under a forum-selection clause and to dismiss the antitrust claims under the *Noerr-Pennington* doctrine. Tricon responded, and Easi-Set replied. (Docket Entry Nos. 8, 11–13).

After a careful review of the pleadings, motion, response, and reply, the properly considered submissions, and the applicable law, the court denies the motion to transfer but grants the motion to partially dismiss the amended complaint. The antitrust claims against Easi-Set are dismissed, with prejudice and without leave to amend, because amendment would be futile. The reasons are explained in detail below.

**I.     Background**

Tricon is a Texas company based in Houston that manufactures and sells "precast concrete and related products," including traffic barriers, for the road-construction industry. (Docket Entry No. 10 at 1, 3). Tricon sells traffic barriers "throughout the State of Texas for installation on roadways to divide traffic lanes." (*Id.* at 3). Easi-Set is a Virginia company headquartered in Midland, Virginia; it licenses precast concrete products. (*Id.* at 1).

In March 2011, Easi-Set obtained Trademark Registration No. 3,927,357 from the United States Patent and Trademark Office for "Concrete Highway Crash Barriers and Concrete Construction Work Zone Barriers." (Docket Entry No. 10-1 at 2 (emphasis omitted)). The '357 Trademark covered:

> the design of two facing angular end tapers of interconnected concrete barriers, which are not part of the mark, such that when the two concrete barriers are connected, the angular end tapers comprising the mark form a "V" shape at the point of connection. The broken lines on the drawing show position of the mark on the goods.

(*Id.* (emphasis omitted)). The '357 Trademark included the following picture:



The Texas Department of Transportation, or "TxDOT," requires traffic barriers to meet certain design specifications. (*Id.* at 3–4). A "significant percentage of TxDOT, county, and other municipality barriers must include a 'V-shape.'" (*Id.* at 4). Because of this, Tricon has put "'V-

shape' tapered ends" on traffic barriers manufactured for "TxDOT and other Texas county and municipality projects," leading Easi-Set to accuse Tricon of infringing the '357 Trademark. (*Id.*). Tricon agrees that the "'V-shape' as described in the '357 [Trademark] . . . is the same design element required in a significant percentage of TxDOT, county, and municipal-compliant precast concrete barriers." (*Id.* at 5).

According to Tricon, Easi-Set has improperly influenced Texas officials to convince them to adopt the V-shape design requirement. (*Id.*). Easi-Set employees allegedly provided Texas officials with "design specifications," without disclosing that Easi-Set had trademarked the V-shape. (*Id.*). Tricon alleges that the V-shape has no legitimate purpose, but admits that the V-shape requires "less concrete" and costs less to manufacture. (*Id.* at 5–7). Tricon alleges that:

> [i]f Easi-Set and/or its licensees are the exclusive suppliers of traffic barriers required by TxDOT, as well as other Texas counties and municipalities, that include Easi-Set's purported "V-shape" trade dress, then such exclusivity would put Tricon and other competitors at a disadvantage, as they would be foreclosed from supplying such TxDOT, county, and municipal-mandated traffic barriers, thereby resulting in an unreasonable restraint of trade and unfair competition within the State of Texas.

(*Id.* at 6). Tricon alleges that "Easi-Set seeks to willfully maintain its monopoly position through improper means rather than through a superior product, business acumen, or historical accident," requiring Tricon to "pay unreasonably high royalties" to use the '357 Trademark. (*Id.* at 7).

Tricon sued Easi-Set in the Southern District of Texas, seeking a declaratory judgment that the '357 Trademark is invalid and must be cancelled, and that Tricon has not infringed it. (*Id.* at 8–9). Tricon asserts that Easi-Set has violated the Texas Antitrust Act and the Sherman Act by "induc[ing] and encourag[ing]" TxDOT "to require the 'V-[s]hape' embodied in the '357 [Trademark] in precast concrete barriers." (*Id.* at 11). Tricon alleges that Easi-Set has succeeded

in these lobbying efforts, making "Easi-Set the sole supplier of precast concrete barrier[s]," and having "a staunch effect on competition." (*Id.* at 10).

Easi-Set moved to transfer to the Eastern District of Virginia and to dismiss the antitrust claims. (Docket Entry No. 8). Easi-Set argues that this case arises from a licensing agreement between Easi-Set and Tricon with a valid and enforceable forum-selection clause; the parties have related litigation pending in the Eastern District of Virginia; and the public and private factors favor transfer. (*Id.* at 3–8). As to the antitrust claims, Easi-Set argued that the "so-called *Noerr-Pennington* doctrine" bars Tricon's claims as a matter of law. (*Id.* at 9–13).

Tricon amended its complaint, making the pending motion to dismiss moot, and responded to the motion to transfer. (Docket Entry Nos. 10–11). Tricon argues that this litigation has nothing to do with the Licensing Agreement; the Virginia litigation concerns different patents and trademarks; the witnesses and evidence are in Texas; and Texas has a strong interest in antitrust claims that involve TxDOT and local governments. (Docket Entry No. 11 at 15–22). Easi-Set replies that the "V-shape" mark is "an integral part of the product line specifically governed by the Licensing Agreement" and that the forum-selection clause applies. (Docket Entry No. 12 at 2–4).

Easi-Set has moved to dismiss the antitrust claims in the amended complaint. (Docket Entry No. 13). Easi-Set "stridently denies that it has done anything improper," but "recogniz[es] that a Rule 12(b)(6) motion is not the appropriate occasion to attack the factual basis of a complaint." (Docket Entry No. 13-1 at 5). Easi-Set argues that "its alleged efforts to influence the State of Texas . . . [are] protected from antitrust scrutiny under the *Noerr-Pennington* doctrine." (*Id.*). Tricon responds that the Easi-Set cannot be shielded "from antitrust liability by having a regulatory body sign off on a requirement that results in anticompetitive activity," and that the sham exception to the *Noerr-Pennington* doctrine applies because Easi-Set's employees did not

tell TxDOT officials that Easi-Set had trademarked the V-shape design. (Docket Entry No. 14 at 4–5). The parties' arguments are considered below.

## II. The Legal Standards

### A. Transfer

The venue statute, 28 U.S.C. § 1391, allows plaintiffs, with some restrictions, to choose where to file suit. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312–13 (5th Cir. 2008) (en banc). Tempering this forum-selection choice, the venue-transfer statute, 28 U.S.C. § 1404, authorizes a district court to transfer a case when the chosen venue is "inconvenient." *Id.* at 313. Section 1404(a) states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This provision equips courts with a tool to "prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient." *In re Volkswagen*, 545 F.3d at 313.

A party moving for transfer "must satisfy the statutory requirements" and clearly demonstrate that a transfer is "for the convenience of the parties and witnesses, in the interest of justice." *Id.* at 315 (alteration omitted). "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* "When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer." *Id.*

To determine whether transfer is convenient, a court must examine private and public factors. *Id.* The private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance

for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious[,] and inexpensive." *Id.* (quotation omitted). The public factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* (alteration and quotation omitted). "A plaintiff's choice of forum is given some—significant but non-determinative—weight." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 767 (5th Cir. 2016) (quotation omitted). These factors are neither "exhaustive" nor "exclusive," and "none can be said to be of dispositive weight." *Volkswagen*, 545 F.3d at 313 (alteration and quotation omitted). The court must "balance a number of case-specific factors" and conduct "an 'individualized, case-by-case consideration of convenience and fairness.'" *In re Rolls Royce Corp.*, 775 F.3d 671, 678 (5th Cir. 2014) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

"The existence of a mandatory, enforceable [forum-selection clause] dramatically alters this analysis." *Weber*, 811 F.3d at 767. The plaintiff's forum choice "merits no weight; instead he has the burden of establishing that" transfer is not proper. *Id.* (quotation omitted). And the court "cannot independently weight the parties' private interests, but must deem such interests to weigh in favor of the preselected forum, the parties having struck that balance by their selection contract." *In re Rolls Royce*, 775 F.3d at 678. "[B]ecause [public] factors will rarely defeat a transfer motion, the practical result is that the forum-selection clauses should control except in unusual cases." *Id.* (alteration omitted) (quoting *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013)).

6

A district court's venue-transfer decision is reviewed for "'a clear abuse of discretion' based on 'extraordinary errors' leading to 'a patently erroneous result.'" *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013) (quoting *Volkswagen*, 545 F.3d at 309, 318).

### B. Failure to State a Claim

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

The court should generally give a plaintiff at least one chance to amend under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) ("[Rule 15(a)] evinces a bias in favor of granting leave to amend." (quotation omitted)); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend

in a manner that will avoid dismissal."). A court may deny a motion to amend for futility if an amended complaint would fail to state a claim on which relief could be granted, using the Rule 12(b)(6) standard. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012). The district court has discretion to grant or deny leave to amend. *Id.*

### III. Analysis

The amended complaint made the motion to dismiss the original complaint moot, as Tricon admits, and that motion is denied. (Docket Entry No. 8). The court looks first at whether the forum-selection clause in the Licensing Agreement requires transfer to the Eastern District of Virginia, weighing the applicable public and private factors. The court then considers Easi-Set's argument that the *Noerr-Pennington* doctrine bars Tricon's antitrust claims.

#### A. Venue Transfer

Venue is permissible in the Eastern District of Virginia because Easi-Set, the only defendant, is a Virginia resident. *See In re Volkswagen*, 545 F.3d at 312–13 ("[A] diversity action may be brought in 'a judicial district where any defendant resides, if all defendants reside in the same State.'" (quoting 28 U.S.C. § 1391(a)(1))).

Easi-Set contends that the Licensing Agreement forum-selection clause requires litigating in the Eastern District of Virginia. In 2004, Easi-Set and Tricon entered into the Licensing Agreement to permit Tricon to manufacture, distribute, and sell the "'J-J Hooks' Interlocking Highway Structure"—Patent No. 5,159,224—and to use Easi-Set's "Words and Logo" and the "'J-J Hooks' Name." (Docket Entry No. 8-5 at 1–2, 18–20). The J-J Hooks Patent, issued in September 1992, was for "a highway barrier system" that "comprises a plurality of rigid upright sections disposed end to end in interlocking relationship[s] such that the end of each of the interlocking sections engages and interlocks with the end of the adjacent upright section." (Docket

Entry No. 8-3 at 34). The Licensing Agreement stated that "[a]ny legal or equitable actions or proceedings relating to this Agreement shall be brought only in federal or state courts with appropriate jurisdiction in the Commonwealth of Virginia." (Docket Entry No. 8-5 at 14).

Tricon argues that the Licensing Agreement does not relate to the '357 Trademark's validity or infringement or to the antitrust claims. A forum-selection clause "is not limited solely to claims for breach of the contract that contains it." *JetPay Merch. Servs., LLC v. Merrick Bank Corp.*, No. 13-CV-3101, 2014 WL 798373, at *2 (N.D. Tex. Feb. 28, 2014). "In determining the scope of the forum selection clause, the [c]ourt must look to the operative facts underlying the alleged causes of action." *Jred Ranch, Ltd. v. EL Toro Res. LLC*, No. 18-CA-982, 2018 WL 7198154, at *1 (W.D. Tex. Oct. 4, 2018) (quoting *Demond v. Infiniti HR, LLC*, Civ. A. No. 17-CV-1322, 2018 WL 4145053, at *4 (N.D. Tex. Aug. 30, 2018)).

Because the forum-selection clause covers claims "relating to" the Licensing Agreement, it is construed broadly to encompass "all claims that have some possible relationship with the contract, including claims that may only relate to the contract." *MaxEn Capital, LLC v. Sutherland*, No. H-08-3590, 2009 WL 936895, at *6 (S.D. Tex. Apr. 3, 2009) (alteration omitted) (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389 (2d Cir. 2007)); *see Pinnacle Interior Elements, Ltd. v. Panalpina, Inc.*, No. 09-CV-430, 2010 WL 445927, at *5 (N.D. Tex. Feb. 9, 2010) ("Clauses that extend to all disputes that 'relate to' or 'are connected with' the contract are construed broadly, while clauses that cover disputes 'arising out of' or over 'the implementation and interpretation of' the contract are construed narrowly." (quoting *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998))). The forum-selection clause extends to "any dispute that 'has some logical or causal connection' to the agreement." *WorldVentures Holdings, LLC v. Mavie*, No. 18-CV-393, 2018 WL 6523306, at *7 (E.D. Tex. Dec. 12, 2018)

(quoting *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (Alito, J.)). But "[i]f the substance of the plaintiff's claims, stripped of their labels, does not fall within the scope of the forum selection clause, the clause cannot apply." *JetPay*, 2014 WL 798373, at *3 (quoting *Aerus LLC v. Pro Team, Inc.*, No. 304-CV-1985, 2005 WL 1131093, at *7 (N.D. Tex. May 9, 2005)).

While neither the Licensing Agreement nor the J-J Hooks Patent mentions the '357 Trademark or the V-shape design, Easi-Set argues that "[t]he 357 Trademark and the 'V-[s]hape' taper design . . . [are] an integral part of the product line specifically governed by the Licensing Agreement." (Docket Entry No. 12 at 2). "Although the 'V-[s]hape taper design was not a registered trademark until 2011," Easi-Set contends, "it was a part of the J J Hooks® barrier product line when the Licensing Agreement was executed in 2004." (*Id.* at 3). Easi-Set submitted an affidavit from its president, stating that:

> [t]he "V-Shape" design feature is shown on the required documentation package for use with the J J Hooks® barrier and was a design feature when the J J Hooks® barrier received its successful [National Cooperative Highway Research Program] Report 350 crash test report in March 1999. . . .
>
> The "V-Shape" taper design feature is an integral part of the J J Hooks® Interlocking Highway Structure product line, which is the subject of the License Agreement entered into by Easi-Set and Tricon in 2004 and has continued to be a part of that product line during every renewal term of the agreement.

(Docket Entry No. 12-1 at 3).

Even accepting that the V-shape mark is used on the J-J Hooks "product line," and has been for some time, this fact alone does not create a logical or causal connection between Tricon's claims and the Licensing Agreement. The Licensing Agreement allowed Tricon to use the J-J Hooks Patent, which does not mention the V-shape mark, and some Easi-Set trademarks, but not the '357 Trademark. (Docket Entry No. 10-1 at 2; Docket Entry No. 8-5 at 2–3, 20).

10

Tricon's allegations are about the validity and infringement of the '357 Trademark, and Easi-Set's successful efforts to convince TxDOT to require "a significant percentage" of concrete traffic barriers to have the V-shape mark. (Docket Entry No. 10 at 4). The amended complaint alleges that Easi-Set has accused Tricon of infringing the '357 Trademark; forced Tricon "to pay unreasonably high royalties" to use it; and required Tricon to do business on Easi-Set's terms. (*Id.* at 3, 10–11). The Licensing Agreement did not give Tricon a right to use the '357 Trademark, and it is unclear under what arrangement Tricon paid royalties to Easi-Set. The '357 Trademark was not discussed in the Licensing Agreement or the J-J Hooks Patent. Tricon's allegations involve the sale of any type of concrete traffic barriers to Texas government entities, not just the J-J Hooks product line, and the claims could have arisen even if Tricon and Easi-Set had no "business dealings." *Jred*, 2018 WL 7198154, at *1 (quotation omitted). Based on the current record, the court finds that Tricon's claims do not have a sufficient logical or causal connection to the Licensing Agreement for its forum-selection clause to govern this litigation. *See, e.g.*, *Rovi Guides, Inc. v. Comcast Corp.*, No. 16-CV-322, 2016 WL 6217201, at *4 (E.D. Tex. Oct. 25, 2016) ("ARRIS does not contend that the ARRIS Agreement itself provides a license for or otherwise covers the products and conduct accused by Rovi.").

This conclusion is reinforced by Texas's special interest in this litigation. The amended complaint alleges that Easi-Set has improperly convinced TxDOT officials to require a trademarked design on many of the concrete traffic barriers purchased by Texas government entities, which has created a monopoly, reduced competition, and increased prices in Texas. (Docket Entry No. 10 at 4). Given these allegations, the Texas interest in having this lawsuit decided in a Texas court is very strong. The other public factors are neutral: the court finds no administrative difficulties relating to court congestion; federal and Texas law applies to Easi-Set's

11

claims; and the court foresees no choice-of-law or foreign-law questions on the horizon. That the Eastern District of Virginia has pending litigation between Tricon and Easi-Set relating to the J-J Hooks Patent does not favor transfer, because that patent has little to do with the alleged '357 Trademark or antitrust violations in Texas.

The private factors also weigh in favor of Texas. Because the allegations are about improper attempts to influence TxDOT officials, most of the evidence and witnesses are likely in Texas. (*See, e.g.*, Docket Entry No. 10 at 5 ("Easi-Set employees frequently met with TxDOT, county, and municipalities within the State of Texas.")). This Texas court may compel nonparty Texas witnesses to testify, and the cost to them to appear in a Texas court will be lower than a Virginia court. *See* FED. R. CIV. P. 45(c)(1)(B) ("A subpoena may command a person to attend a trial, hearing, or deposition . . . within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . would not incur substantial expense."). The only Virginia witnesses are likely to be Easi-Set employees, who Easi-Set may require to attend depositions or trial. *See Piernik v. Collection Mgmt. Co.*, No. 17-CV-320, 2018 WL 1202972, at *4 (W.D. Tex. Jan. 25, 2018) ("Employees of a party are considered party witnesses, as opposed to non-party witnesses . . . . because the employees can be presumed to appear willingly on behalf of their party employer." (quotation omitted)). Because the allegations are of misconduct in Texas, the court finds that trying this case in a Texas court would be faster and less expensive.

Because the public and private factors weigh in favor of trying this case in Texas, and because the forum-selection clause does not apply to Tricon's claims, the motion to transfer to the Eastern District of Virginia is denied. (Docket Entry No. 8).

### B. The *Noerr-Pennington* Doctrine

Tricon has asserted claims against Easi-Set under the Texas Antitrust Act and the Sherman Act. (Docket Entry No. 10 at 9–12). In applying the Texas Antitrust Act, "the Texas Supreme Court has instructed lower courts to adhere to 'federal judicial interpretations' of the analogous federal statute," the Sherman Act. *McPeters v. LexisNexis*, 11 F. Supp. 3d 789, 796 (S.D. Tex. 2014) (quoting *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 687 (Tex. 1990)); *see Am. Airlines, Inc. v. Sabre, Inc.*, 694 F.3d 539, 543–44 (5th Cir. 2012) ("[S]tate courts look to federal law interpreting the Sherman Act for guidance in interpreting the Texas Antitrust Act." (quotation and alteration omitted)). "The analysis of claims under the Texas Antitrust Act and the Sherman Act are substantially identical." *Oncology Tech., LLC v. Elekta, Inc.*, No. 12-CA-314, 2013 WL 12171788, at *1 (W.D. Tex. Apr. 25, 2013) (citing *Apani Sw., Inc. v. Coca–Cola Enter.*, 300 F.3d 620, 628 (5th Cir. 2002)).

Easi-Set argues that the *Noerr-Pennington* doctrine bars the antitrust claims as a matter of law, noting that "a Rule 12(b)(6) motion is not the appropriate occasion to attack the factual basis of a complaint." (Docket Entry No. 13-1 at 5). The *Noerr-Pennington* doctrine must be asserted as an affirmative defense. *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000); *Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 295 (5th Cir. 2000). "As with other affirmative defenses, if the applicability of the *Noerr-Pennington* doctrine 'appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate.'" *Wolf v. Cowgirl Tuff Co.*, No. 15-CV-1195, 2016 WL 4597638, at *8 (W.D. Tex. Sept. 2, 2016) (quoting *Miller v. BAC Home Loans Serv., L.P.*, 726 F.3d 717, 726 (5th Cir. 2013)). But plaintiffs are "not required to plead, in the complaint, facts that negate an affirmative defense." *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 351 (5th Cir. 2011); *see Flying Food Grp., Inc. v. N.L.R.B.*, 471 F.3d 178, 183 (D.C. Cir.

2006) ("[A] 'plaintiff is not required to negate an affirmative defense in his complaint.'" (quoting *Tregenza v. Great Am. Comm'cns Co.*, 12 F.3d 717, 718 (7th Cir. 1993))).

The *Noerr-Pennington* doctrine comes from two Supreme Court cases: *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965). "The essence of the doctrine is that the parties who petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws even though their petitions are motivated by anticompetitive intent." *Video Int'l Prod., Inc. v. Warner-Amex Cable Comm'cns, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988). "The *Noerr-Pennington* doctrine confers immunity to private individuals seeking anticompetitive action from the government." *Bayou Fleet*, 234 F.3d at 859. It applies "to any concerted effort to sway public officials regardless of the private citizen's intent." *Id.* "[E]fforts to influence public officials will not subject individuals to [antitrust] liability, even when the sole purpose of the activity is to drive competitors out of business." *Id.* at 861.

The *Noerr-Pennington* doctrine has a "sham" exception. *See id.*; *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 690 (5th Cir. 2010). Enforcing antitrust laws is "justified when petitioning activity, ostensibly directed toward influencing governmental action, is a mere sham to cover an attempt to interfere directly with the business relationships of a competitor." *Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) (alteration and quotation omitted). "The 'sham' exception involves attempts to influence public officials for the sole purpose of expense or delay." *Bayou Fleet*, 234 F.3d at 861. It "applies to defendants who use the process as an anticompetitive weapon, rather than those who genuinely seek to achieve an intended result." *Id.* at 861–62; *see Brown & Root, Inc. v. La. State AFL-CIO*, 10 F.3d 316, 325 (5th Cir. 1994) ("[T]he sham exception requires distinguishing between seeking to influence public

officials, which is permitted by *Noerr-Pennington*, and seeking to bar their competitors from meaningful access to adjudicatory tribunals and the decision-making process."). "The evidence must show that a defendant's lobbying activities were 'objectively baseless' for the 'sham' exception to apply." *Bayou Fleet*, 234 F.3d at 862 (quoting *Columbia Pictures*, 508 U.S. at 60). "Lobbying activity is objectively baseless if a reasonable private citizen could not expect to secure favorable government action." *Id.* The Supreme Court has stated that "a successful 'effort to influence governmental action certainly cannot be characterized as a sham.'" *Columbia Pictures*, 508 U.S. at 58–59 (alteration omitted) (quoting *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 502 (1988)).

Courts have often declined to rule on the *Noerr-Pennington* doctrine on a motion to dismiss, reasoning that it is an affirmative defense that typically requires "consideration of evidence outside of the pleadings."[1] *Cowgirl Tuff*, 2016 WL 4597638, at *9 n.7 (quoting *Morrone Co. v. Barbour*, 241 F. Supp. 2d 683, 690 (S.D. Miss. 2002)). But courts have dismissed antitrust claims under the *Noerr-Pennington* doctrine where the complaint alleges that the defendant accomplished the "alleged goal" through lobbying or litigation, meaning that the sham doctrine

---

[1] *See, e.g.*, *Honeywell Int'l Inc. v. MEK Chem. Corp.*, No. 17-CV-1390, 2018 WL 6737514, at *5 (N.D. Tex. July 5, 2018) ("At this stage in the proceedings, the Court declines to decide the applicability of the Noerr-Pennington doctrine. The Court does not have enough factual information nor an appropriate procedural vehicle to make an ultimate decision, but Defendants have done enough to at least plausibly allege the sham exception."); *Motwani v. Wet Willies Mgmt. Corp.*, Civ. A. No. 17-2060, 2017 WL 3311246, at *5–*6 (E.D. La. Aug. 3, 2017); *Constr. Cost Data, LLC v. Gordian Grp., Inc.*, No. H-16-114, 2017 WL 2266993, at *5–*7 (S.D. Tex. Apr. 24, 2017); *Engineered Arresting Sys. Corp. v. Runway Safe LLC*, No. 15-CV-546, 2016 WL 6087906, at *4 (W.D. Tex. Sept. 19, 2016); *Cowgirl Tuff*, 2016 WL 4597638, at *9 ("[T]he Court is not convinced that *Noerr-Pennington* immunity is apparent from the face of the pleadings. Nothing on the face of the complaint forecloses the possibility that Plaintiffs will be able to show that Defendant's activities fall under the sham exception."); *Source Network Sales & Mktg., LLC v. Ningbo Desa Elec. Mfg. Co., Ltd.*, No. 14-CV-1108, 2015 WL 2341063, at *11 (N.D. Tex. May 15, 2015); *Eon Corp. IP Holdings, LLC v. Landis+Gyr Inc.*, No. 11-CV-317, 2013 WL 12040726, at *5 (E.D. Tex. May 17, 2013); *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, No. 10-CV-677, 2010 WL 4392547, at *6 (S.D. Cal. Oct. 28, 2010) ("Given the intense factual findings required to assess the *Noerr-Pennington* doctrine and its exceptions, the Court does not find it appropriate to resolve the privilege at this stage.").

could not apply. *See Waste Mgmt. of La., LLC v. River Birch, Inc.*, Civ. A. No. 11-2405, 2014 WL 1329780, at *3 (E.D. La. Mar. 31, 2014).[2] This case falls into the latter camp.

Tricon alleges that Easi-Set, "through improper solicitation and contact with TxDOT, counties, and municipalities within the State of Texas," excluded competition by getting those entities to incorporate the V-shape in the design specifications for concrete traffic barriers. (Docket Entry No. 10 at 2–3). Easi-Set employees, by meeting with Texas officials, allegedly persuaded TxDOT, municipalities, and counties "to implement the 'V-[s]hape' design requirement" for concrete traffic barriers. (*Id.* at 5). "[B]y ensuring that a significant percentage of TxDOT, county, and municipal-compliant precast concrete barriers include the 'V-[s]hape' tapered ends," Tricon alleges, "Easi-Set has created an improper monopoly and improperly excluded competition, thus also raising the cost for these precast concrete barriers." (*Id.* at 7). Tricon alleges that Easi-Set successfully lobbied TxDOT, as well as Texas municipalities and counties, to include the trademarked V-shape design in the specifications for the concrete traffic barriers those entities used.

Tricon argues that Easi-Set is not entitled to antitrust immunity based on the state-action doctrine, discussed by the Supreme Court in *Cantor v. Detroit Edison Co.*, 428 U.S. 579 (1976),

---

[2] *See, e.g., Indus. Models, Inc. v. SNF, Inc.*, No. 15-CV-689, 2015 WL 5606384, at *2–*3 (N.D. Tex. Sept. 23, 2015); *Fuller v. Eagle Constr. & Env't Servs., L.P.*, No. 08-CV-326, 2009 WL 10677839, at *2–*3 (E.D. Tex. Feb. 9, 2009); *Jebaco, Inc. v. Harrah's Operating Co., Inc.*, Civ. A. No. 06-4175, 2008 WL 638618, at *9 (E.D. La. Mar. 5, 2008); *Love Terminal Partners, L.P. v. City of Dall.*, 527 F. Supp. 2d 538, 552 (N.D. Tex. 2007) ("Plaintiffs do not allege facts that state a plausible claim that either agreement was negotiated or adopted for any purpose other than to effect the amendment and eventual repeal of the Wright Amendment."); *Bartholomew v. Bail Bonds Unlimited, Inc.*, Civ. A. No. 05-4165, 2007 WL 1063338, at *4 (E.D. La. Apr. 5, 2007) ("[T]he Marcotte Defendants clearly sought to use the outcome of maximizing their profits and hindering competition, as an anticompetitive weapon. They were not merely using the governmental process as a method which, in itself, would injure the plaintiff."); *Utility Choice, L.P. v. TXU Corp.*, No. H-05-573, 2005 WL 3307524, at *4 (S.D. Tex. Dec. 6, 2005) ("[B]ecause Defendants actually obtained the GLO contracts, Reliant's activities do not fit within the sham exception of the *Noerr-Pennington* doctrine, and, accordingly, the doctrine bars Plaintiffs' federal antitrust claims.").

and *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980). The state-action doctrine extends antitrust immunity to anticompetitive conduct under "state regulatory programs" that the state has "clearly articulated and affirmatively expressed as state policy" and "actively supervise[s]." *Destec Energy, Inc. v. S. Calif. Gas. Co.*, 5 F. Supp. 2d 433, 444 (S.D. Tex. 1997) (quoting *DFW Metro Line v. Sw. Bell*, 988 F.2d 601, 604 (5th Cir. 1993)). The state-action doctrine and *Noerr-Pennington* doctrine are separate bases for antitrust immunity. While the state-action doctrine provides antitrust immunity for activity under state regulatory programs, the *Noerr-Pennington* doctrine extends antitrust immunity to individuals seeking anticompetitive action from the government through litigation or lobbying. *See Bayou Fleet*, 234 F.3d at 859; *Destec Energy*, 5. F. Supp. 2d at 445–64. Because Easi-Set does not assert the state-action doctrine as an affirmative defense, it does not apply. *See Destec Energy*, 5 F. Supp. 2d at 445 n.8 ("The Supreme Court and appellate court cases cited have clarified that state action immunity is an affirmative defense." (collecting cases)).

Easi-Set's alleged lobbying does not violate the antitrust laws even if it was intended to, and did, eliminate or reduce competition. *See Acoustic Sys.*, 207 F.3d at 294 ("[A]s a general rule, lobbying and other efforts to obtain legislative or executive action do not violate the antitrust laws, even when those efforts are intended to eliminate competition or otherwise restrain trade."). Tricon argues that the complaint plausibly alleges a sham, and that more discovery is required, because Easi-Set employees met with TxDOT officials about specifications for concrete traffic barriers and "willfully failed to disclose the important fact that the 'V-[s]hape' tapered ends were a registered trademark." (Docket Entry No. 14 at 10–11). This allegation fails to support an inference that a "reasonable private citizen," standing in Easi-Set's shoes, could not have "expect[ed] to secure favorable government action." *Bayou Fleet*, 234 F.3d at 862. Easi-Set employees "frequently met

with TxDOT, count[ies], and municipalities within the State of Texas and provided these government entities with . . . design specifications." (Docket Entry No. 10 at 5). The fact that Easi-Set successfully convinced entities to adopt the V-shape design, which Tricon admits uses less concrete and is less expensive, is insufficient. (*Id.* at 7). Because Easi-Set's actions were "a successful effort to influence governmental action," they "cannot be characterized as a sham." *Columbia Pictures*, 508 U.S. at 58–59 (quotation omitted); *see e.g.*, *Bayou Fleet*, 234 F.3d at 862 ("Because the Clulees achieved favorable results, their endeavors were, by definition, reasonable."); *Lamar Cty. Elec. Co-op. Ass'n v. Rayburn Cty. Elec. Co-op., Inc.*, 330 F. Supp. 2d 763, 766 (E.D. La. 2002) ("Rayburn's lawsuit was successful, and therefore it cannot be characterized as sham.").

The court finds that, based on the face of the second amended complaint, the *Noerr-Pennington* doctrine bars Tricon's antitrust claims as a matter of law. Because Easi-Set allegedly succeeded in lobbying TxDOT to include the V-shape design in concrete-traffic-barrier specifications, the sham doctrine does not apply, and the *Noerr-Pennington* doctrine bars the antitrust claims against Easi-Set.

**IV. Conclusion**

Easi-Set's motion to dismiss the original complaint is denied as moot. (Docket Entry No. 8). The motion to transfer venue is denied. (*Id.*). Easi-Set's motion to dismiss the amended complaint is granted. (Docket Entry No. 13). The antitrust claims are dismissed, with prejudice and without leave to amend, because amendment would be futile. (Docket Entry No. 13).

SIGNED on July 8, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge